UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

MOHAMMAD JASHIM UDDIN,

                Plaintiff,

     v.                                              Case # 19-CV-285-FPG
                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
───────────────────────────────────────

## INTRODUCTION

      Plaintiff Mohammad Jashim Uddin brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

      Plaintiff protectively applied for DIB and SSI on May 12, 2015, alleging disability since August 1, 2014 due to recent open heart surgery and heart disease. Tr.[1] 77-79, 184, 212-16. After the Social Security Administration ("SSA") denied his application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 37-76. On February 22, 2018, the ALJ issued an unfavorable decision. Tr. 8-29. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 15. For the following reasons, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

**LEGAL STANDARD**

**I.     District Court Review**

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.    Disability Standard**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of the claimant's age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467,

470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.920.

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of January 16, 2016. Tr. 14. At step two, the ALJ assessed Plaintiff with the severe impairments of coronary artery disease, status post five-vessel coronary artery bypass graft with stent replacements, residual low back pain and mid-chest pain, right shoulder rotator cuff tear, cervicalgia, and diabetes mellitus with diabetic neuropathy. Tr. 14-16. At step three, the ALJ found that none of Plaintiff's impairments meet or medically equal the criteria of any Listings impairment and determined that Plaintiff retains the RFC to perform light work with additional postural and exertional restrictions. Tr. 16-22. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work, and at step five, the ALJ found that Plaintiff can adjust to other work that exists in significant numbers in the national economy. Tr. 22-24. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 25.

### II.  Analysis

Plaintiff argues that the ALJ erred in relying heavily on the opinion of consultative internal medicine examiner Hongbiao Liu, M.D., who only examined Plaintiff on a single occasion prior to his amended alleged onset date of January 16, 2016—the date he was involved in a car accident. The Court agrees.

When Plaintiff originally applied for DIB and SSI on May 12, 2015, he alleged disability due to recent open heart surgery and heart disease. Tr. 212, 216. He had been experiencing chest

3

pain and underwent a five-vessel coronary artery bypass graft in February 2015. Tr. 334-40. Plaintiff saw Dr. Liu for a consultative examination on July 29, 2015. Tr. 449-52. At that time, Plaintiff complained of constant chest and low back pain in the middle of the chest with radiation to the low back after surgery. Tr. 449-52. Dr. Liu diagnosed Plaintiff with coronary artery disease with chronic chest and low back pain, hypertension, diabetes, history of asthma, gastric reflux disease, and depression. Tr. 452. He opined that Plaintiff had "mild to moderate" limitations in prolonged walking, bending, and kneeling; that Plaintiff should avoid moderate exercise activity because of his cardiac condition; and that he should avoid dust and other irritating factors to limit asthma attacks. Tr. 452.

However, approximately five months later, on January 16, 2016, Plaintiff was involved in a car accident. That same day, he went to the Emergency Department at Buffalo General Hospital complaining of progressive chest achiness and mild superior neck pain. Tr. 513. After the accident, he continued to experience chest pain, Tr. 507-08, but also began reporting pain in the low back, cervical spine, right shoulder, and knees. Tr. 469, 477, 482-83, 487.

On September 8, 2016, Plaintiff saw orthopedic doctor, A. Marc Tetro, M.D., at Pinnacle Orthopedics for his right shoulder pain. Tr. 585. Dr. Tetro noted Plaintiff's car accident; that Plaintiff reported continued significant pain in the right shoulder with only "mild" improvement with 17 sessions of outpatient physical therapy; and that Plaintiff had not undergone any injections secondary to uncontrolled blood glucose levels. Tr. 585. Dr. Tetro reviewed Plaintiff's May 24, 2016 right shoulder MRI, which showed abnormalities. Tr. 585-86. Upon examination, Plaintiff had positive results for various tests for rotator cuff impingement and other shoulder-related pathologies. Tr. 586-87. Dr. Tetro diagnosed Plaintiff with right shoulder rotator cuff tear tendonitis/impingement syndrome, right shoulder glenoid labrum tear with proximal biceps

tenosynovitis, right shoulder post-traumatic AC joint arthrosis, and cervical origin pain. Tr. 587. He opined that as a result of the car accident related injuries, Plaintiff was unable to work and would be considered disabled with regard to his usual occupation. Tr. 588. He directed Plaintiff to follow up with him in four weeks for reevaluation. Tr. 588.

Plaintiff saw Dr. Tetro again on October 6, 2016. Tr. 581. Dr. Tetro again noted only "mild" improvements with continued physical therapy. Tr. 583. He again noted that Plaintiff could not work and was disabled, but also indicated that Plaintiff could return to work on November 20, 2016 without restrictions on his shoulder. Tr. 584.

Plaintiff's hearing before the ALJ was held on January 25, 2018. Tr. 37. At the hearing, Plaintiff continued to complain of neck pain and right shoulder pain. He said that his neck pain is constant, but if he turns his head or changes position, it flares up; that his neck pain radiates through his shoulders down to his right hand; that it felt as though someone was "pricking" a needle from the top of his neck into his right hand; and that his right shoulder pain is continuous and his upper arm hurts if he moves his right shoulder. Tr. 53-56. He also testified that he did physical therapy, but it only helped on the day of his appointments, afterwards his pain returned. Tr. 60. Plaintiff stated that he receives help from his wife with numerous activities of daily living, such as showering and using the toilet. Tr. 65. His wife also does the housework, cooking, shopping, and driving. Tr. 63-64.

The ALJ found that Plaintiff had a right rotator cuff tear and limited Plaintiff to light work with additional restrictions, including, as relevant here, that Plaintiff could "engage in frequent, but not constant, reaching (including in front and/or laterally and with overhead reaching) with the right upper extremity" and could "engage in frequent, but not constant, rotation, flexion, and extension of neck movement, meaning that, for between 1/3 and 2/3 of an eight-hour workday, the

claimant is able to look down, turn his head right or left, look up, and hold his head in a static position." Tr. 18.  In crafting this RFC, the ALJ gave "significant weight" to Dr. Liu's opinion but "very little weight" to Dr. Tetro's opinions.  Tr. 21.  The ALJ relied on Dr. Liu's expertise, examination of Plaintiff, and his opinion's consistency with the overall medical evidence.  Tr. 21.  He rejected Dr. Tetro's opinions because they included "no appropriate durational assessment or function-by-function assessment of [Plaintiff's] work-related abilities" and "pertain[ed] only to the right shoulder condition rather than the totality of [Plaintiff's] impairments over the entire period at issue."  Tr. 21.

Plaintiff argues that the ALJ erred in relying on Dr. Liu's opinion because it was rendered before Plaintiff's car accident and is therefore silent as to Plaintiff's shoulder and neck limitations.  The Commissioner concedes that Dr. Liu's opinion "may not be fully probative of impairments caused or exacerbated by [Plaintiff's] motor vehicle accident," but argues that it "remains probative of all other limitations and of [Plaintiff's] condition before the accident."  ECF No. 16 at 16.

The Court rejects the Commissioner's argument.  While Dr. Liu's opinion might be relevant to some other elements of Plaintiff's RFC, it is not at all probative of Plaintiff's shoulder and neck limitations resulting from his accident.  *See, e.g.*, *Burns v. Saul*, No. 19-CV-81-MJR, 2020 U.S. Dist. LEXIS 96807, at *12 (W.D.N.Y. June 2, 2020) (finding Dr. Liu's opinion to be stale where, like here, it was rendered before the claimant was in a car accident and, also like here, was rendered more than two years before the hearing); *James v. Comm'r of Soc. Sec.*, No. 19-CV-147, 2020 U.S. Dist. LEXIS 118070, at *8 (W.D.N.Y. July 6, 2020) (finding that consultative examiner's opinion was stale where it was rendered before a car accident).

Because the ALJ rejected Dr. Tetro's opinions regarding Plaintiff's shoulder—for the puzzling reason that Dr. Tetro's opinions pertained only to the shoulder—the ALJ's RFC determination with respect to Plaintiff's neck and shoulder was not based on any relevant medical opinions and thus was not supported by substantial evidence.  *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639 (W.D.N.Y. 2020) (holding that "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence") (citation omitted); *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 471-72 (W.D.N.Y. 2018) (holding that an ALJ usually must "rely upon a medical source's opinion in considering the limitations, if any, associated with [a claimant's] impairment," unless the claimant has only minor impairments such that the ALJ could make a common sense judgment regarding the claimant's limitations).  The Court does not find this to be "a case in which Plaintiff's impairments are relatively simple and mild, such that the ALJ was permitted to render a common sense judgment about functional capacity even without a physician's assessment."  *Ippolito v. Comm'r of Soc. Sec.*, No. 1:18-CV-00403 EAW, 2019 U.S. Dist. LEXIS 140825, at *11 (W.D.N.Y. Aug. 19, 2019).

The staleness of Dr. Liu's opinion and the ALJ's rejection of Dr. Tetro's opinions created a gap in the record that the ALJ was required to fill.  *See Burns*, 2020 U.S. Dist. LEXIS 96807, at *12; *James*, 2020 U.S. Dist. LEXIS 118070, at *8.  The ALJ could have recontacted Dr. Tetro or sent Plaintiff for a new consultative examination.  *See Winnert v. Comm'r of Soc. Sec.*, No. 18-CV-771Sr, 2020 U.S. Dist. LEXIS 31871, at *15 (W.D.N.Y. Feb. 25, 2020) (where physician's opinion was stale, ALJ should have sought? updated medical source statement); *Crawley v. Berryhill*, No. 1:16-CV-00271 (MAT), 2018 U.S. Dist. LEXIS 87556, at *10 (W.D.N.Y. May 24,

2018) (ordering ALJ to obtain updated consultative examination upon remand where examiner's opinion was stale). Because the ALJ did not, remand is required.[2]

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 13, is GRANTED, the Commissioner's motion, ECF No. 15, is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 9, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[2] Plaintiff also argues that the portion of the RFC finding that Plaintiff can "engage in frequent, but not constant, rotation, flexion, and extension of neck movement, meaning that, for between 1/3 and 2/3 of an eight-hour workday, the claimant is able to look down, turn his head right or left, look up, and hold his head in a static position" is ambiguous. Plaintiff contends that this leaves nothing for the neck to do the remaining third of the day except to lay face down. Although the Court suspects that by "hold his head in a static position" the ALJ meant holding the head in a position looking in a direction other than forward—meaning that the remaining third of the day, the neck would be spent in a neutral position—the Court agrees that this statement is ambiguous and directs the ALJ to clarify it on remand. The Court declines to reach Plaintiff's remaining argument.